Patriot Group v. Hilco Financial Counsel, how much time do you want to reserve for rebuttal? How much time do I have total? Fifteen minutes. Fifteen total? Okay, well then I'd like to do, I guess, ten and reserve five. Ten and five? Yeah. Now can you just identify yourself for the record? My name is Steve Rice. I represent the plaintiffs, the Patriot Group in this case. This is not a microphone. Speak up. It's just a recording device. Please record it. My name is Steve Rice. I represent the Patriot Group in this case. May it please the Court? The circuit court found numerous genuine issues of material fact, including intent, materiality, reasonable reliance, and causation. But granted the Hilco entity's summary judgment anyway, not because the court disagreed about the existence of multiple issues of fact. Instead, the court granted summary judgment in favor of the Hilco appraisal entities, holding that Patriot could not establish materiality, inflation of the appraisals, and proximate causation without a separate appraisal of the underlying collateral. And the court granted summary judgment in favor of Hilco Trading and Hilco Financial, holding that there was insufficient evidence of damages. The issues here are, one, whether Patriot was required to have an independent appraisal of each loan's collateral to establish that the loans were inflated, or could Patriot establish overstatement and causation through expert testimony identifying negligent misrepresentations in the appraisals? And two, could Patriot establish causation between Hilco's misrepresentations as to loan defaults, impairment, and financial statements, and Patriot's damages based on the testimony of Chuck Forbes? To succeed at trial, Patriot would have to prove each of the elements of its claims against the Hilco entities. However, to defeat summary judgment, which is what we're dealing with here, Patriot must only show that it can prevail on each element or that there's a material issue of fact for each element. Summary judgment should be reversed here because the evidence presented establishes a genuine issue of material fact on each of the elements. There are more than a dozen genuine issues of material fact that should be decided by the trier of fact here. The court below specifically identified at least eight issues that it says are questions of material fact. The first one is whether the financial reports provided to Patriot by Hilco Trading and Hilco Financial contain misrepresentations concerning the condition of loans and the existence of defaults. Judge McGrath found that, quote, Hilco Financial disclosed some minor problems but not the extent and materiality of those problems. And Patriot has presented evidence in support of its theory that there were failures to disclose defaults, modifications, and waivers with respect to the underlying borrowers. Hilco has offered no response to that finding. Second material fact is whether the Hilco financial statements were prepared in accordance with GAAP, as was represented in the financial statements themselves. Patriot's expert, Deeds, testified that the financial statements were not in compliance with GAAP. And whether, in addition to that, whether the financial statements are in accordance with GAAP is a fact question. And the judge based that on the Hilco case, 74F sub 7. Third issue is whether the Hilco Trading prepared financial statements contain misrepresentations regarding loan loss reserves and the impairment of loans. Judge McGrath said that whether the Hilco loan loss reserves were sufficient is a question of fact. She also said a jury could conclude that this loan loss reserve was an arbitrary figure not consistent with GAAP. But once again, she's finding specifically material issues of fact. Fourth, whether the misrepresentations concerning defaults, amendments, and waivers were material. So materiality is a question of fact here. Fifth, whether Patriot reasonably relied on the representations. The judge found that, quote, there's also a genuine issue of material fact as to reasonable reliance. And I think there's a genuine issue of material fact if Patriot justifiably relied upon Hilco Financial's duty to disclose in its certifications that there were no events of default. Sixth, whether Trading and Hilco Financial intended for Patriot to rely on the representations. Judge McGrath found that, quote, regarding intent, I think that Patriot has raised a genuine issue of material fact, end quote. Seventh, the extent to which Hilco Trading, as opposed to Hilco Financial, participated in Hilco's misrepresentations. Judge McGrath again said, quote, there's a genuine issue of material fact as to Hilco Trading's role in the alleged fraud, end quote. And she found that there are, quote, genuine issues of material fact as to what information Hilco Trading was privy to. And at eighth, whether Hilco Trading and Hilco Financial's misrepresentations proximately caused or established loss causation with respect to Patriot's damages. Now, this last question of fact, proximate or loss causation, is crucial to Hilco's defenses, because Hilco takes the position that none of the other material facts are important if Patriot cannot show loss causation. The flaw in this argument is that the question of whether Patriot can establish loss causation is itself a question of fact precluding summary judgment. As explained by Judge Grath once again, there are going to be a number of issues, but all of that's going to causation. It's enough to raise a genuine issue of material fact. Can we go back to number two, dealing with the experts? Our query is whether or not your expert was actually able to identify what the other party had done to the appraisals. Can you explain that? Because I understand that it's not clear that your expert was able to actually bring that evidence. Well, first, there's two different appraisals. I'm sorry. There's two different experts here. There's one expert who, which is covered under Section 2 here, there's one expert who looked at the financial statements from an accounting perspective and held that the appraisals, the financial statements, I mean, were not in accordance with GAAP. So there's one expert, Dietz, who says the financial statements are not in accordance with GAAP. There's another expert, Van Vliet, who looked at the appraisals. And he's an appraiser, and he looked at each of the four appraisals that are at issue, and he identified the areas that he thought were not in accordance with industry standard. So it's a little bit different. One is whether the financial statements are in accordance with GAAP. The other is whether the appraisals are in accordance with industry standards. So in addition to the questions of fact relating to the argument is that the, what your experts testified to was sufficient. Sufficient to, well, the appraisal expert, his testimony was sufficient to show that there were serious problems with all of the appraisals and that they contained misrepresentations. Again, for example, each of the financial, each of the appraisals says in the appraisal itself that they are done in conformance with industry standard. And our expert looked at that and said, no, that is not true. The appraisals also, three of the four appraisals, said that they were done in accordance with OLV, it's orderly liquidation value. If you're looking at appraisals of assets, there's different types that can be done. This one, orderly liquidation value, is the appraisal is done on the assumption that the assets are going to have to be liquidated. So it's supposed to be a conservative kind of approach. And the expert, Van Vliet, looked at that and said, no, they say it's supposed to be in accordance with orderly liquidation value, but it is not. So that was another one of the misrepresentations in the appraisals. In addition to the material facts with respect to the loans and the waivers and all of that, which are directed primarily to Hilco Trading and Hilco Financial, there's also issues of fact regarding patron's claims against appraisal, the appraisal company. First, I'm not going to go through quite as many on this one, and I'm not going to go over all the quotes as well. I'll just identify what the material issues of fact are with respect to the appraisals. And those are misrepresentations regarding appraisals being in accordance with industry standard, we just talked about that, and orderly liquidation value. That's one. Second is the materiality of the misrepresentations with respect to appraisal. Third is the reasonable reliance by Patriot on the appraisals. Fourth is whether appraisal expected Patriot to rely on those appraisals. And last, whether Patriot can establish damages based on the misrepresentations. So we have on the ones against trading and financial, we have at least eight that the judge agreed were material issues of fact, and there's at least four or five or maybe even more with respect to the appraisals as well. Mostly your ten minutes is about up. That was quick. Would I have another minute or two? One. Forbes' testimony regarding what he would have done. Forbes, Chuck Forbes, he was the president of Patriot, and he was very involved in all of the loan process. He testified that, I think the upshot of this from my perspective is that there was very likely a substantially earlier point in time, in 2008, where if the true state of the portfolio in these assets that I've mentioned were truly known, then additional extensions of credit likely would not have happened, new loans would not have been approved. And I read that one because I think it's very important. There's many other excerpts, but Chuck Forbes was testifying that if he had known of all the problems in the loans, he would have acted differently. He would not have approved further extensions of credit to those borrowers. He wouldn't have approved the amendment of the credit facility, and he wouldn't have made additional advances. So thank you. Good morning, Your Honors. Good morning. My name is Morgan Hurst. I represent Hillcote Trading, one of the appellees. And please forgive my cell phone here, but I want to ensure that there's enough time for David Duffy, who represents the appraisal entities and is seated at council table, to speak as well. I will be speaking on the common law fraud claims. How much time do you require? It's Hurst, Your Honor, H-I-R-S-T. Your Honor, we're trying to split. I'll probably go for about nine of the minutes, and I'm going to leave the rest of my time to Mr. Duffy. All right. And he represents the appraisal entities. I will be speaking on the common law fraud claim that Patriot has brought against my client, trading, and against 1310 Financial, who is represented by Mr. Reitzel, who is sitting directly behind council table. He is ceding his time to me, and will rest on his briefs on the remainder of the arguments concerning his client. Your Honors, this is a contract dispute between Patriot and my client. Of course, Your Honor. So coming in front of you, because we don't want to miss the recording, Justice Reitzel needs to hear it. So please speak into it. I will do so, Your Honor. As I was saying, this is a contract dispute, Your Honor, between Patriot, the appellant, who is a Connecticut-based hedge fund, and 1310 Financial. The parties entered into a contract to go into what's called asset-based lending. They were lending to companies on the margins, companies that couldn't obtain traditional bank loans, and those loans were backed by nothing more than the collateral that these underlying companies had. This was a high-risk, high-reward set of loans, and Patriot knew full well, as experts in this area, what they were getting into. Not surprisingly, in the mid-2000s, when this arrangement went into effect, it was very successful. Patriot enjoyed double-digit returns. Then, when the economy began to suffer later in the 2000s, the investment went down. These borrowers, these borrowers on the margins, began to default on their loan agreements to Financial. Financial then defaulted on its loan agreement to Patriot, and Financial ultimately collapsed. Patriot now tries to repackage this breach of contract claim, Your Honor, into a variety of meritless-based tort claims against parties who are not party to that contract. That includes the common law fraud claim that they have submitted against my client, Trading. But there is no evidence supporting the record as elements of common law fraud, let alone clear and convincing evidence, the standard under Illinois law for such a claim. The trial court voted this case for more than six years. The trial court saw through the arguments and agreed that summary judgment was due for the defendants, finding no disputed issue material fact, and granted that summary judgment. We ask that you affirm. We first talk about the issue of loss causation. This was one of the grounds that the trial court found was a basis to grant summary judgment. Under Illinois law to demonstrate causation in a case like this, you have two elements. You have what's called transaction causation, which this court has previously said proves that the defendant's conduct caused the plaintiff to enter the transaction in the first place. And then you have loss causation, which touches upon the reasons that the investment declined, that the investment failed. And the key to this, and this is from the first district in Bastion, where a plaintiff is induced to make an investment in reliance on conduct which, however deceitful, is immaterial to the operative reasons for the loss. He has failed to prove loss causation. After years in the trial court, Patriot claimed it didn't need to prove loss causation. Having failed in the trial court with that specious argument, it now at least admits it needs to do so, but it still has no evidence to support that. You heard counsel already talk to the idea that their testimony that they rely on is the testimony of their managing director, who said, had he known what he thinks is the true state of affairs, he might have done something differently. Well, that goes solely to the issue of transaction causation. It doesn't speak in any way, shape, or form to the issue of loss causation. First, they have no evidence. And here I suggest, Your Honors, what they would have done different is an interesting question, because the record shows that all of the loans, all of the money Patriot lent here, had already been lent at the point they claimed there were any misrepresentations. So there's something different that Patriot needs to show, is that they would have been able to exit this investment quicker or sell the underlying collateral. That's the transaction causation. The loss causation then asks the question, so what? Would Patriot have recovered a single dime more had they done so? And that is where there is absolutely no evidence in the record supporting that Patriot would have even recovered one more dime. No evidence as to what the collateral would have been worth had they sold it at an earlier time. No evidence that they would have recovered any more in exiting the loans. There is not a single shred of evidence that my client trading caused Patriot to lose a dime. On the flip side, there is significant evidence demonstrating that nothing we did caused any damage. Indeed, Patriot claims that they became aware of the true state of affairs in February of 2008. That's when, at that point, Patriot admits they knew everything. Yet, the record evidence shows that from February of 2008 all through the summer of 2008, Patriot believed it could fully recover on its loan. Patriot told that to its investors. They told it to the market. They had two outside financial advisors come in and tell them the same thing. Your investment is fully recoverable. Now why is this important, your honors? Because if Patriot's investment was fully recoverable after it became aware of the true state of affairs, then how could anyone's fraud, how could trading's fraud, have caused it a dime of damages? The answer is it did not. The evidence demonstrates the cause here was the financial crisis of 2008. That is when they tried to sell this collateral. And we all remember 2008, your honors, and what happened to this economy. Excuse me. The worst economy in generations. And now in the battle, Patriot admits, evidence in the record, that the economy absolutely had an impact on its ability to recover on the value of any of the collateral here, to exit these loans. Now this is not me asking your honors to make an inference based on competing evidence. On the one hand, you have absolutely no evidence that trading caused any damage to Patriot. On the other hand, you have significant evidence that Patriot's damage was caused by something else. The trial court understood this, found there were no genuine issues of material effect on loss causation, and granted summary judgment as a result. You should affirm. I'd like to speak very briefly, your honors, on the issue of fraudulent misrepresentation, the bedrock of any fraud claim, a false statement. Despite a six-year discovery process, hundreds of thousands of documents, 20 depositions, Patriot has still not identified a single misrepresentation made by my client, trading. What Patriot tries to do to replace its lack of evidence is submit before you 80-page briefs with unsighted and unsupported allegations, conflating various distinct legal entities in the hopes that you'll believe something. There must be some disputed issue of fact among all that morass. When we actually review the record, your honor, when we actually review Patriot's allegations as to misrepresentations, you'll see there's absolutely no evidence of any misrepresentations by my client, trading. You're saying even the expert testimony? Your honor, Mr. Dietz, I think, is who you're referring to there. That was their accounting expert, who can certainly not speak to whether we misrepresented anything. What Mr. Dietz talked about was that financial statements that Financial had submitted on a monthly basis to Patriot, Patriot's allegation and Dietz's testimony is that they falsely certified that they were done in compliance with GAAP, done in compliance with generally accepted accounting principles. Here is the problem, at least as to my client, trading. Every single one of those documents was signed by Financial. Every single one of those documents was certified by Financial. None of those documents was signed by or certified by my client, trading. The sole evidence about our role with those financial statements is we acted as Financial's accountant. We compiled those records based on Financial's accounting records. That is not a misrepresentation of my client. If it is, then every accounting firm in this country better get a whole bunch more lawyers to represent them for every time that they submit financial statements. There is no misrepresentation evidence in this case, and there never has been. It's an additional reason you can grant summary judgment for us, your honor, an informed summary judgment. We rely on our briefs for the removal of our arguments, and I would like to cede the remainder of my time to Mr. Duffy unless your honors have any further questions for me. Thank you very much. May it please the court, your honors, counsel, my name is David Duffy. I represent the appraisers, Local Appraisal Service and Enterprise Valuation Service. Hold on a moment. Okay. And you represent? Local Appraisal Service and Enterprise Valuation Service, the two appraisal entities. Your honors, they received summary judgment in the trial court, and we asked this court to affirm, because simply stated, Patriot has not come forward with evidence to prove the material elements of its case. The appraisers were sued because they claimed as the junior lender in this transaction, there was a primary lender who had the first right to the collateral. As the junior lender, they say they didn't get their money back. And they say that when these assets were sold that Mr. Hurst talked about, that sold by the senior lender, that they fetched essentially no value to come back to them. So what did they do? They sued my clients, the appraisers, for negligent misrepresentation. This is not a malpractice case. This is not a case simply about whether appraisals were negligently performed. This is a negligent misrepresentation case, which, like fraud, requires a false statement of material fact. That's what the trial court found was lacking, and the trial court was correct, your honor, because Patriot failed to present competent and admissible evidence to show that the appraised value of these assets, which is the essence of their claim, was false. And because Patriot failed to present any competent and admissible evidence as to my clients, that even if they claimed there was some erroneous statement, and I think your honors alluded to some of that from the expert, that that was any cause of the loss. As Mr. Hurst described, the loss causation element. They had one witness, your honors, you noted. It was their expert, Daniel Van Vliet. He was offered to testify that the valuation figures in these appraisals were false. There were four appraisals. Mr. Van Vliet talked a lot of criticisms about the appraisals. There's no dispute about that. But the one thing that Mr. Van Vliet can't do, your honors, and is completely lacking in this record, is say whether any of the actual values were false. In fact, Mr. Van Vliet said, you know what, the values could actually be right, even in the face of criticism that I have. Now, that's really important, your honors, because importantly, Mr. Van Vliet said he could have determined whether the actual values were false, but he wasn't asked to do that. The plaintiff's counsel, the attorneys, they had never offered a reason why, but they didn't actually ask the man to determine what the real value of these assets were on the date that those assets were appraised. He reviewed and critiqued the appraisals, and he testified that they had not been performed in accordance with industry standards, but he couldn't tell us that there was ever a false statement. In fact, your honor, he went so far as to say that he never looked at a false statement. Now, why does all this matter? Well, I think to understand the case that Patriot has brought against my clients, it's easier to think of something we all have been there with. For example, a home appraisal. To purchase a home, the mortgagor requires an appraisal to support the value of the loaned amount. The appraiser conducts the appraisal and provides an opinion of the value on the date of that appraisal. Now, the appraiser is not a predictor of unforeseen events, which is really important in this case. They can happen and do happen all the time. For example, suppose you bought that property because of its unobstructed lake view, and then you closed on the house, and a week later they get proposal to put up a building that takes away that unobstructed lake view. We didn't foresee that. Add additional fact to it, your honor, that the economy changed, and the housing market wasn't worth the same as it was when it started at that time. Now, you sell that house a year later, and guess what? You get $100,000 less than you thought. You immediately go, the appraised value a year ago was wrong, or you don't do that. And if you ask that question of the appraiser, was it wrong? I'm sure you could come up and an appraiser would say, well, you could have found more comparables. You could have done something else that would make that number questionable. But that doesn't answer the question here, your honors, because as you can see, without having an understanding of the value of what the appraiser should have been at the time it was appraised, you can't reach the question of whether there was any loss suffered. That $100,000 loss has as much to do with the market, has as much to do with the loss of your view potentially, as it does by any mistake that the appraiser made. That's why the court required the plaintiffs to present evidence of a false statement of material fact saying that the actual value was wrong. It's not enough to simply criticize. And then if I move to loss causation, which I think ultimately is absolutely a reason to affirm the trial court, just like in my home appraisal example, your honor, without evidence of what the appraised value of those assets should have been in 2007 when they were appraised as opposed to when they were attempted to be sold years later in the financial crisis, the trial court found that the kids showed that the real loss was approximately caused by the appraisal valuations and not by the financial crisis. Their own witness at Patriot said the financial crisis had material and meaningful impacts on asset valuations. These were unique assets. We're talking about a valuation of luxury rail cars, passenger rail cars. I'm sure the market was not robust to go by passenger rail cars when they tried to sell that in the downturn. And the judge didn't do anything more to Patriot than what this law in this jurisdiction says, which is show me evidence that a jury is not simply speculating that your loss has something to do with the appraised values themselves. And they don't have that evidence in the record, your honor. There's nobody that testified what these values should have been or could have been at the time that they were appraised. It's one thing and easy to say, if I knew the appraised value was different, my decision making about whether to enter into this transaction would have been different. That's easy to say. But we don't know if these appraisals were wrong by any magnitude because Mr. Van Vliet didn't do that analysis. And then it's quite another thing to say that the reason you lost what you did is because of some material misstatement. Now, I just want to conclude, your honors, by saying that they, and I think your honor alluded to it, their expert talks about, well, you didn't do these things in accordance with industry standards. That's why the loss causation doctrine exists. That in itself doesn't lead to any loss. That's not a material misstatement of fact. The material misstatement of fact that they want you to understand is that these things weren't worth the dollar value they said. If we didn't comply with an industry standard, it did what Mr. Van Vliet said. It rendered the opinion of value potentially not fully reliable. It doesn't mean it's wrong, and he couldn't say it was wrong. So now there is no evidence to conclude what the actual loss flows from that misstatement. No loss flows from the failure to comply with an industry standard. Simply put, your honors, absent evidence of what Patriot claims the actual appraised value should have been when they were presented, as the trial court found, there's no basis for a jury to conclude what portions of the losses would be attributable to anything wrong with the appraisals and what portions of the loss are attributable to those other factors, notably the financial crisis. And this would be true regardless of what misstatement Patriot claims the appraisers make in the appraisal apart from the actual value. Your honor, this principle makes very good sense. If you don't follow this principle, you do what the Martin v. Heinhold commodities case said when it exemplified the loss causation doctrine, you would now make appraisers in this context insurers for every investment loss, and that's why we have this doctrine. If the court has no further questions, I'll be glad to sit down and rest on the remainder of my briefs. Thank you, counsel. Please proceed, counsel, and please respond to Mr. Duffy's last statement. When he's arguing that nobody says what the values should have been or could have been at the time appraised. Mr. Duffy is correct that a separate appraisal was not done, that it wasn't needed. What the appraiser did here is, if you picture an appraiser, he went through it and looked for anything that was an error, anything that was misstated, and those kinds of things. And what he found is that with each of the four appraisals, there was a significant material problem that affected the appraised value. As an example, selective beauty was one of the loans. And when the appraisal done by the appraisal was for, I think, $5,750,000. When Van Vliet looked at the appraisal, he noted that the appraiser from Helco appraisal did not take into consideration the fact that the same assets, and these were trade names and intellectual property, had been purchased within the last year or two for $2,000,000. And so he sees this appraisal saying, oh, it's worth $5,750,000, and he knows that it was sold for $2,000,000. So he said that the appraisal was off by at least the $2,000,000. And so while he didn't say the value should be this, he said it should be no greater than this. So he didn't have to come up with a separate number for it, because what he was able to do from the appraisal itself was to show a misrepresentation and a major error in the appraisal. Same thing with one of the others. It's called Grand Locks. They make luxury railroad cars. And on that one, the appraiser from Helco appraisal gave a valuation of, I think, it was $19.5 million. But when Mr. Van Vliet looked at the file, he found that Helco appraisal didn't actually do an appraisal. What they did was they found an appraisal that somebody else, not related to this case, that somebody else had done of the same railroad cars a couple of years earlier, and he came up with a valuation that it was based on, it wasn't based on a current appraisal, it was based on them taking somebody else's appraisal, changing a few of the numbers. The original one that they were using said that it was based on cost only, and the one that they did, they took the same number and said, no, that's a market appraisal, which you look at comparable kind of thing. And so for each of the four, there was no separate appraisal, but there was specific facts in each one that showed that it was off by at least X million dollars. So we don't think that there had to be a separate appraisal at that point. We were able to show that there were misrepresentations. And remember, it's a negligent misrepresentation claim against the appraisal. So we were able to show that there were significant misstatements, negligent misstatements in the appraisal itself. And the jury can figure out the damages part of it. All the numbers are there. It's not that hard for them to do. And again, that's why the court found that there's a question, a material question of fact on this issue as well. A couple other points. But your opponent insisted that you have not identified any evidence of misrepresentation. Okay. The misrepresentation in the appraisals, the misrepresentations were, first, that the representation was made that these appraisals were done in accordance with industry standards. That is wrong. And we have two experts who say that. Second, they say these appraisals were done on only liquidation value. That's not true. It's false. And we have an expert who says that. They also said these assets were worth X dollars. And we have evidence showing they're not worth X dollars. We don't know whether they're worth X minus a million or X minus two million, but we know it's X no greater than X. It had to be less. So we have all three of those are ways that we can show that there were negligent misrepresentations contained in the appraisals. The dollar amount can be determined by the jury. All the information is there. And so that's all beyond the negligent misrepresentation part. You know, counsel said that the judge here, the judge below, sat through six years of this case, and that is absolutely true. But after those six years, she basically found it's just filled with material issues of fact. And the only reason why she granted some rejection was on the one loss causation issue. And again, the cases are very clear that for both proximate cause and for loss causation, there are questions of fact that should be done by the fire effect. I know we don't have much time here. Answering very briefly the co-co-trading argument about that it had no role in this. Co-co-trading directly provided to Patriot, monthly financial statements containing representations of bulk accuracy and gap, compliance certificate that provided certification of the covenants in the loans, schedules of investments, appraisals of the collateral, and co-co-trading also participated in the credit approval and review process. So co-co-trading was part of this with co-co-financial. The way Judge McGrath described it is co-co-trading was responsible for preparing co-co-financial's financials, pursuant to an agreement between it and co-co-financial. Co-co-trading had complete access to and total control over co-co-financial's books and records, and co-co-trading's officers were members of the committee that reviewed the underlying loans. So even the trial judge recognized that co-co-trading was integral to the whole process. It worked with co-co-financial. And by the way, it owned co-co-financial as well, or most of it. And co-co-trading was just as responsible as co-co-financial. In fact, in their written policies and procedures, it's specified that all loan accounting and cash management would be handled by co-co-trading's accounting department, and all accounting policies and procedures would be performed by co-co-trading. So that's an answer to co-co-trading. On the loss causation, Chuck Forbes testified that Patriot would not have lost nearly as much of its investment, but for the circumstances that the fraud concealed. And this is looking at the loss causation issue. The circumstances concealed by the fraud was the dismal performance and dismal state of the loan portfolio and the numerous incidents of loan defaults, waivers, and amendments. And Chuck Forbes testified unequivocally that had he had that information before, had those statements been correct, he would have acted differently. And we would be sitting here in a very different situation if the problems with the loan portfolio had been conveyed to Patriot at an earlier date. On the issue of the economy, it's impossible to estimate what the economy did to it in a precise amount. However, Chuck Forbes said in his experience, and he has a lot of experience, for this kind of loan portfolio, he testified that he would have expected a loss in the 10 to 30 percent range, not 100 percent like it ended up happening. When Mr. Forbes was questioned about what he would have done differently, because counsel raised that issue as well, he testified, quote, I think that the upshot of this, from my perspective, is that there was very likely substantially earlier point in time than early 2008, but if the true state of the portfolio and these assets that I have mentioned were truly known, then additional extensions of credit likely would not have happened, new loans would not have been approved. You need to conclude. I'll conclude right now. Thank you very much. Thank you, counsel. Thank you all for your arguments. This matter will be taken under advisement.